This is an action for actionable negligence brought by plaintiff against defendant. Defendant denied negligence and pleaded contributory negligence and assumption of risk.
The specific allegations of negligence relied upon by the plaintiff are: "The negligent failure to provide plaintiff with a reasonably safe place to work, negligent failure to make proper inspection of the tunnel, in order to ascertain the danger to the plaintiff, which danger was unknown to the plaintiff, by reason of his inexperience, and which was known and could have been ascertained by the defendant by proper inspection, in the exercise of due care. The failure to exercise due care to brace the walls of the tunnel so as to render safe place where the plaintiff was required to work in the discharge of his duty; and negligently required the plaintiff to work in a place of danger, which could have, in the exercise of due care, been ascertained by the defendant by the exercise of reasonable inspection and which dangers were unknown to the plaintiff."
The evidence: The plaintiff was 53 years old, and for about three months before his injury had been working for the defendant, assisting in getting out acid wood; working two weeks in a rock quarry and three days mining for talc. While working in the quarry, defendant's foreman, Mr. Day, called upon one Ivester and the plaintiff to take a pick and shovel and go prospecting for talc. They went out prospecting, and in a short while Ivester found a place he thought contained talc, and called plaintiff to where he was working. A short while later Mr. Day, the foreman, came and looked at the place and he and plaintiff and Ivester for the remainder of that day (Friday) and all day Saturday, and was at the mine Monday morning a few minutes before plaintiff was injured. The place where plaintiff and Ivester were working under Davis' supervision was an old mine, previously operated. While Mr. Day, the foreman, was present, he did most of the digging, the plaintiff and Ivester throwing the dirt back and sorting out the talc. The place they were working was beside of a ledge of rock, with an overhanging rock, one end of which was resting on the ledge and the other end on another stone. The tunnel had been cut through the dirt and between and underneath the rocks and the dirt had been removed back some distance in the hill beyond the rocks, the rocks forming a sort of portal. One of these rocks had moved about an inch, and on Saturday apparently there had been two 6 x 6 braces put across the portal and driven in to hold the rock from moving further. On Monday morning the plaintiff and Ivester were sent to the place of work and told to go ahead. Mr. Day came in half an hour. Plaintiff had dug down about *Page 533 
two wheelbarrows full of dirt and was ready to throw out the same when the foreman. Mr. Day, arrived. Mr. Day looked around the mine, said it looked all right, and told plaintiff and Ivester to go ahead with the work, and he would be back in a short while, or as soon as he took some other men to "Hoot Owl." Mr. Day had been gone only three or four minutes when the plaintiff, who was down on his knees shoveling the dirt back over his head, saw what looked like water on the rock, examined and found it was water. He immediately got up to get out of the mine, and while stooping to go under the two braces above mentioned, was struck by a large block of dirt falling from the side of the wall and knocked up against the stone on the opposite side, raised up to go over the top of the braces, found he could not do so, again stooped to go under the braces, when several tons of dirt and stone slid from the slanting rock forming the ledge on one side of the tunnel and was crushed against the opposite bank, hurt both his shoulders, "bursted" one, three ribs broken and other injuries sustained.
Plaintiff was an inexperienced man, having never before worked in a mine, was given no warning or instructions whatever of the dangers incident to his employment; was not instructed to brace the mine or furnished any bracing material with which to brace the mine. Defendant did not inspect the mine further than to look around, and said "it looked all right."
The issues submitted to the jury and their answers thereto were as follows:
"1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: Yes.
2. Did the plaintiff, by his own negligence, contribute to his injury, as alleged in the answer? Answer: No.
3. Did the plaintiff assumes the risk of being injured in the way and manner he was injured, as alleged in the answer? Answer: No.
4. What damages, if any, is plaintiff entitled to recover of the defendant? Answer: $1,000."
At the close of plaintiff's evidence, defendant moved for judgment as in case of nonsuit. C. S., 567. The court below denied the motion, and in this we think there was no error.
We think there was sufficient evidence to be submitted to the jury.
This action is similar to Buchanan v. Furnace Co., 178 N.C. 652. In that case the whole subject is thoroughly discussed. See Street v. CoalCo., ante, 178. *Page 534 
Defendant relied on Mace v. Mineral Co., 169 N.C. 143. In that case the foreman, an experienced miner, was killed in a mine by falling rock and dirt. The workmen in the mine were under his authority. The manner and method of doing the work was left to the foreman's judgment — he being in charge and had to use due care to make the place to work safe, as he went, for those under him. As it were, under the circumstances, he made his own place to work. Heaton v. Murphy Coal Iron Co., 191 N.C. 835. We find in the record
No error.